OPINION
{¶ 1} Following a jury trial, defendant-appellant, Eric L. Brundage, was convicted of felony murder pursuant to R.C. 2903.02(B) and felonious assault pursuant to R.C. 2903.11(A)(1). He now appeals those convictions, raising eight assignments of error. Because we hold that the trial court erred in failing to give a jury instruction on the lesser-included offense of involuntary manslaughter, we reverse the convictions and remand the case for a new trial.
 {¶ 2} The state's evidence showed that the victim, Larry Thomas, had been in a fight with Brundage's friend, Mitchell Johnson. Marcus Stokes, Thomas's cousin, broke up the fight and took Thomas into Martin's Bar to calm down. Johnson stood outside and continued to yell angrily. He threatened, "Wait until my boy gets down here."
 {¶ 3} A short time later, Brundage arrived outside Martin's Bar. Johnson approached Brundage's car, and witnesses saw Brundage pass an object that looked like a gun to Johnson. Johnson then entered the bar, brandishing the gun. A minute or two later, Brundage entered the bar, where he saw Johnson and Thomas grappling for the gun. Brundage approached the two and struck Thomas from behind. Thomas fell to the ground, and Johnson and Brundage struck and kicked him.
 {¶ 4} Brundage, who was substantially larger than Thomas, picked him up under the arms, carried him outside, and threw him onto the concrete. The left side of Thomas's head struck the ground, causing a skull fracture. The deputy coroner who conducted the autopsy of Thomas's body stated that a substantial amount of force was needed to cause Thomas's injuries. When Brundage attempted to move Thomas, a bystander advised him to stop. Brundage and Johnson left the scene in the same car in which Brundage had arrived. Thomas died several days later.
 {¶ 5} Brundage testified that he had not given Johnson a gun, but that Johnson had retrieved a gun that he had left in Brundage's car several days earlier. He stated that he did not strike or kick Thomas. He claimed that he never intended to harm Thomas and that he was simply trying to break up the fight when he carried Thomas outside. He carried him vertically, with his feet pointed toward the ground. Brundage dropped him feet first, and Thomas lost his footing and fell. Several witnesses testified that one of Thomas's legs appeared to be broken.
 {¶ 6} When Brundage realized that Thomas was hurt, he tried to go to his aid, but a bystander told him not to move Thomas. Brundage asked his aunt, who was present at the scene, to call an ambulance. Nevertheless, he did not believe that Thomas's injuries were that serious, so he and Johnson walked to Brundage's car and left the scene. Johnson was arrested soon after the altercation. Subsequently, Brundage became a suspect. The police arrested him at his girlfriend's residence, where he surrendered without resistance.
 {¶ 7} In his first assignment of error, Brundage contends that the trial court erred in denying his request for jury instructions on involuntary manslaughter and negligent homicide. He argues that due process required the trial court to instruct the jury on all lesser offenses justified by the evidence. We hold that, given the evidence presented at trial, the trial court should have instructed the jury on involuntary manslaughter.
 {¶ 8} The Ohio Supreme Court has adopted a two-pronged test to determine whether a jury instruction on a lesser-included offense is warranted. First, the trial court must determine whether the offense in the requested instruction is a lesser-included offense of the charged crime by comparing their statutory elements. State v. Thomas (1988), 40 Ohio St.3d 213,215-216, 533 N.E.2d 286; State v. Coulter (1992),75 Ohio App.3d 219, 225, 598 N.E.2d 1324. Using this test, courts have held that negligent homicide pursuant to R.C. 2903.05 is not a lesser-included offense of felony murder pursuant to R.C. 2903.02(B). State v. Evans, 153 Ohio App.3d 226,2003-Ohio-3475, 792 N.E.2d 757, ¶ 44; State v. Langford,
8th Dist. No. 80753, 2003-Ohio-159, ¶ 41. See, also, State v. Koss
(1990), 49 Ohio St.3d 213, 218-219, 551 N.E.2d 970; State v.Jenkins (1983), 13 Ohio App.3d 122, 122-123, 468 N.E.2d 387. Therefore, the trial court did not err in failing to given an instruction on negligent homicide.
 {¶ 9} But involuntary manslaughter under both R.C. 2903.04(A) and (B) is a lesser-included offense of felony murder. State v.Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, at ¶ 79; State v. Talley, 8th Dist. No. 83237, 2004-Ohio-2846, ¶ 62-64. But, see, State v. Cherry, 9th Dist. No. 20771, 2002-Ohio-3738, ¶ 68-80. Therefore, to determine whether the court should have given jury instructions on involuntary manslaughter, we must go to the second prong of the test.
 {¶ 10} Under the second prong, the court must examine the facts and determine whether the jury can reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. State v. Kidder (1987), 32 Ohio St.3d 279, 280,513 N.E.2d 311; Coulter, supra, at 225, 598 N.E.2d 1324. The persuasiveness of the evidence regarding the lesser-included offense is irrelevant, and the evidence must be considered in the light most favorable to the defendant. State v. Campbell
(1991), 74 Ohio App.3d 352, 358, 598 N.E.2d 1244. A court should give a charge on a lesser-included offense where the evidence presented at trial can reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. Thomas, supra, at paragraph two of the syllabus.
 {¶ 11} Brundage was charged with felony murder pursuant to R.C. 2903.02(B). It provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." In this case, the felony underlying the murder charge was felonious assault, which requires the defendant to act knowingly. SeeState v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931,775 N.E.2d 498, ¶ 30-34; State v. Johnson, 1st Dist. Nos. C-020256 and C-020257, 2003-Ohio-3665, ¶ 52-56.
 {¶ 12} Brundage contends that the evidence supported an involuntary-manslaughter instruction under both R.C. 2903.04(A) and (B) because the evidence was conflicting as to whether he acted knowingly. His argument as to R.C. 2904.04(A) makes little sense. R.C. 2903.04(A) provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." He does not suggest a different felony that could have served as the underlying felony. He states that an instruction under R.C. 2903.04(A) should have had felonious assault as the underlying offense. But felonious assault is a second-degree felony and an offense of violence. See R.C. 2903.11(D) and 2901.01(A)(9)(a). If felonious assault is the underlying offense that caused the death of another, felony murder is the proper charge. Therefore, the trial court did not err in refusing to give an instruction on involuntary manslaughter pursuant to R.C. 2903.04(A).
 {¶ 13} But Brundage's argument has merit as to R.C. 2903.04(B), which provides that "[n]o person shall cause the death of another * * * as the proximate result of the offender's committing or attempting to commit a misdemeanor of any degree * * *. Even the state's witnesses testified that Brundage carried Thomas out of the bar with his head up and his feet toward the ground. Had the jury believed Brundage's evidence that Thomas fell after Brundage dropped him on his feet, it could have reasonably concluded that he did not act knowingly, but only recklessly. See R.C. 2903.13(B). Similarly, the jury could have reasonably concluded that Brundage knowingly caused or attempted to cause physical harm to Thomas, but not serious physical harm. See R.C. 2903.13(A). Therefore, it could have reasonably found Brundage guilty of involuntary manslaughter with simple assault under R.C. 2903.13(A) or 2903.13(B) as the underlying offense. See State v. Wong (1994), 95 Ohio App.3d 39, 53,641 N.E.2d 1137; State v. Pack (1996), 110 Ohio App.3d 632, 636-637,674 N.E.2d 1263; State v. Thrasher (Jan. 21, 1994), 2nd Dist. Nos. 2996 and 2997.
 {¶ 14} In fact, the jurors, during deliberation, specifically asked the trial court, "Is the jury allowed to recommend an alternate charge, such as involuntary manslaughter?" The court replied in the negative. Under the circumstances, we hold that the trial court erred in failing to give an instruction on the lesser-included offense of involuntary manslaughter pursuant to R.C. 2903.04(B).
 {¶ 15} Further, assault pursuant to R.C. 2903.13(A) and (B) is a lesser-included offense of felonious assault pursuant to R.C. 2903.11(A)(1). State v. Hartman (1998),130 Ohio App.3d 645, 646-647, 720 N.E.2d 971; State v. Vera, 8th Dist. No. 79367, 2002-Ohio-974; Thrasher, supra. Brundage's evidence, if believed, could reasonably have supported an acquittal on the charge of felonious assault and a conviction for assault. SeeThrasher, supra. While Brundage did not request an instruction on simple assault, such an instruction was implicit in his request for an instruction on involuntary manslaughter. Also, an instruction on simple assault was necessary to prevent a manifest miscarriage of justice in this case. Therefore, the trial court committed plain error in failing to instruct the jury on simple assault under both R.C. 2903.13(A) and (B). See State v.Wickline (1990), 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913;State v. Cooperrider (1983), 4 Ohio St.3d 226, 227,448 N.E.2d 452. We sustain Brundage's first assignment of error, reverse both of his convictions and remand the case for a new trial.
 {¶ 16} In his second assignment of error, Brundage contends that the trial court erred in giving a jury instruction on flight. He argues that the evidence did not show that he fled from justice. We cannot hold that the flight instruction in this case was reversible error.
 {¶ 17} Evidence of flight is admissible to show consciousness of guilt. State v. Taylor, 78 Ohio St.3d 15, 27, 1997-Ohio-243,676 N.E.2d 82; State v. Eaton (1969), 19 Ohio St.2d 145,249 N.E.2d 897, paragraph six of the syllabus, vacated as to death penalty (1972), 408 U.S. 935, 92 S.Ct. 2857; State v. Wallace
(Dec. 31, 1996), 1st Dist. No. C-950465. An instruction on flight is proper if the record contains sufficient evidence to support the charge. State v. Benjamin, 8th Dist. No. 80654, 2003-Ohio-281, ¶ 31; State v. Martin (Apr. 28, 1995), 11th Dist. No. 93-L-015. Flight means some escape or affirmative attempt to avoid apprehension. It can take the form of fleeing from the police or eyewitnesses, or changing or disguising one's physical characteristics after the fact. State v. Wesley,
8th Dist. No. 80684, 2002-Ohio-4429, ¶ 19.
 {¶ 18} The decision whether to instruct the jury on flight lies within the trial court's discretion. A reviewing court will not reverse that decision absent an abuse of discretion.Benjamin, supra, at ¶ 29; Martin, supra.
 {¶ 19} We have some trepidation about saying that simply walking away from the scene of the crime constitutes flight, particularly given that Brundage later surrendered to the police without resistance. Nevertheless, in Eaton, supra, the defendant claimed that the victim was killed accidentally in a scuffle. In holding that evidence of flight was relevant to intent, the Ohio Supreme Court stated that "[t]he facts show that the defendant fled from the scene of the homicide without attempting to aid the person whom he claims was accidentally killed. His flight from the scene tended to disprove defendant's claim that the homicide was an accident." See, also, Benjamin,
supra, at ¶ 32; Wallace, supra.
 {¶ 20} Similarly, the state's evidence in this case, if believed, demonstrated that Brundage immediately left the scene even though Thomas appeared to be seriously injured, knowing that the police would probably soon arrive. This evidence showed consciousness of guilt and tended to rebut Brundage's claim that he did not intend to seriously injure Thomas. Under the circumstances, we cannot hold that the trial court's decision to give a flight instruction was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 21} Further, the trial court instructed the jury that while it could consider Brundage's flight as evidence of consciousness of guilt, it was not required to do so. The court told the jury that it could find an innocent explanation for his flight and should "give the flight no further consideration in connection with the guilt or innocence of the defendant." Thus, the court's instruction did not raise a presumption of guilt or shift the burden of proof to Brundage to explain his flight. SeeState v. McKibbon, 1st Dist. No. C-010145, 2002-Ohio-2041;State v. Draper, 10th Dist. No. 02AP-1371, 2003-Ohio-3751, ¶ 33; Martin, supra. We, therefore, overrule Brundage's second assignment of error.
 {¶ 22} In his third assignment of error, Brundage contends that he was denied due process of law because of prosecutorial misconduct. He argues that the prosecutor improperly expressed his opinion in closing argument that Brundage lied during his testimony. This assignment of error is not well taken.
 {¶ 23} The test for prosecutorial misconduct is (1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's substantial rights. Statev. Lott (1999), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; Statev. Hirsch (1998), 129 Ohio App.3d 294, 309-310, 717 N.E.2d 789. The conduct of the prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, 405,613 N.E.2d 203; Hirsch, supra, at 309-310, 717 N.E.2d 789.
 {¶ 24} Our review of the record shows that the prosecutor's remarks were comments upon the inconsistencies in Brundage's story and the state's evidence, not the sort of flagrant attacks on the defendant and the defendant's counsel that courts have found to be reversible error. See State v. Madden, 10th Dist. No. 01AP-1470, 2002-Ohio-3722, ¶ 26; State v. Stubblefield
(Feb. 13, 1991), 1st Dist. No. C-890597; State v. Wiggins (Oct. 10, 1988), 11th Dist. No. 12-258. Under the circumstances, we cannot hold that the prosecutor's remarks were improper or that they denied Brundage a fair trial.
 {¶ 25} Further, Brundage failed to object to these comments, which precludes him from raising the issue on appeal unless it rises to the level of plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13, 444 N.E.2d 1332; Hirsch, supra, at 309-310. We cannot hold that, but for the remarks, the outcome of the trial clearly would have been otherwise. Consequently, the alleged prosecutorial misconduct did not rise to the level of plain error. Wickline, supra, at 119-120, 552 N.E.2d 913;Hirsch, supra, at 309-310, 717 N.E.2d 789.
 {¶ 26} Brundage also contends that his counsel's failure to object to the prosecutor's remarks denied him effective assistance of counsel. Brundage has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Consequently, he has failed to meet his burden to show ineffective assistance of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687-694, 104 S.Ct. 2052; State v. Hamblin
(1988), 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476; State v.Thomas (Aug. 29, 1997), 1st Dist. No. C-960242. A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. State v. Brown (1988), 38 Ohio St.3d 305, 319,528 N.E.2d 523; Thomas, supra. Accordingly, we overrule Brundage's third assignment of error.
 {¶ 27} In his fourth assignment of error, Brundage contends that the evidence was insufficient to support his convictions. In his sixth assignment of error, he contends that the trial court erred in overruling his Civ. R. 29 motions for judgments of acquittal, which is the same as a claim that the evidence was insufficient to support the convictions. State v. Ritze,154 Ohio App.3d 133, 2003-Ohio-4580, 796 N.E.2d 566, ¶ 12. Therefore, we address these assignments of error together.
 {¶ 28} These assignments of error are not rendered moot by our reversal of Brundage's convictions due to the trial court's failure to instruct the jury on the lesser-included offense of involuntary manslaughter. A determination of insufficient evidence would mean a complete failure of proof by the prosecution so that the Double Jeopardy Clause would bar a retrial. State v. Thompkins, 78 Ohio St.3d 380, 386-388,1997-Ohio-52, 678 N.E.2d 541; Ritze, supra, at ¶ 12.
 {¶ 29} Our review of the record shows that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brundage knowingly caused serious physical harm to Thomas. Therefore, the evidence was sufficient to support his conviction for felonious assault under R.C. 2903.11(A)(1). See State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Murray, 156 Ohio App.3d 219,2004-Ohio-654, 805 N.E.2d 156, ¶ 3.
 {¶ 30} Further, the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brundage caused Thomas's death as a proximate result of committing felonious assault, a second-degree felony of violence. Therefore, the evidence was sufficient to support Brundage's conviction for felony murder pursuant to R.C. 2903.02(B). See Miller, supra, at ¶ 20-34; Jenks, supra, at paragraph one of the syllabus. Accordingly, we overrule Brundage's fourth and sixth assignments of error.
 {¶ 31} In his fifth assignment of error, Brundage contends that his convictions were against the manifest weight of the evidence. Our ruling on his first assignment of error reversing his convictions and remanding the case for a new trial renders this assignment of error moot. We, therefore, decline to address it. See App. R. 12(A)(1)(c); Thompkins, supra, at 386-388,678 N.E.2d 541; Ritze, supra, at ¶ 138.
 {¶ 32} In his seventh assignment of error, Brundage contends that the trial court erred in admitting into evidence the investigating officer's opinion that Brundage was guilty of murder. The record shows that the officer testified that he had signed murder charges against Brundage because he had reasonable cause to believe that Brundage had committed murder. This testimony was improper opinion testimony, and its admission into evidence was error. See State v. Johnson, 88 Ohio St.3d 95,111, 2000-Ohio-276, 723 N.E.2d 1054; State v. Webb,70 Ohio St.3d 325, 333, 1994-Ohio-425, 638 N.E.2d 1023.
 {¶ 33} Nevertheless, viewing the evidence as a whole, we hold that no reasonable possibility existed that the evidence contributed to Brundage's conviction. Therefore, the error was harmless beyond a reasonable doubt. See Webb, supra, at 333-334, 638 N.E.2d 1023; State v. Bayless (1976),48 Ohio St.2d 73, 357 N.E.2d 1035, paragraph seven of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3135. We, therefore, overrule Brundage's seventh assignment of error.
 {¶ 34} In his eighth assignment of error, Brundage contends that the trial court erred in allowing the state to use a peremptory challenge to exclude an African-American juror from the jury panel in violation of Batson v. Kentucky (1986),476 U.S. 79, 106 S.Ct. 1712. He argues that the court erred in finding that the state's reasons for using the challenge were race-neutral. This assignment of error is not well taken.
 {¶ 35} Brundage objected when the state used a peremptory challenge to exclude the African-American juror. The prosecutor explained that he had excused her because she had been a member of a jury in another trial in which the jury had acquitted the defendant when the prosecutor thought a conviction was warranted. He noted that he had used another challenge to exclude a white juror who had sat on that same jury panel. He also stated that he was concerned because the juror could not remember anything about her prior jury service seven years ago.
 {¶ 36} Thus, the record shows that the prosecutor provided a race-neutral explanation for the use of the peremptory challenge. The trial court's acceptance of this race-neutral reason was not clearly erroneous under the facts of this case. Brundage has not met his burden to show discriminatory intent. See State v.O'Neal, 87 Ohio St.3d 402, 409, 2000-Ohio-449, 721 N.E.2d 73;State v. White, 85 Ohio St.3d 433, 436-337, 1999-Ohio-281,709 N.E.2d 140; Murray, supra, at ¶ 7-10. Accordingly, we overrule his eighth assignment of error.
 {¶ 37} In sum, we sustain Brundage's first assignment of error regarding the trial court's failure to instruct the jury on the lesser-included offenses of involuntary manslaughter and simple assault. We reverse his convictions and remand the case for a new trial.
Judgment reversed and cause remanded.
Hildebrandt and Painter, JJ., concur.