**State v.**
**Chemequip Sales, Inc.**
*[Cite as 5 AOA 206]*

*Case No. 14461*
*Summit County, (9th)*
*Decided August 29, 1990*

*Brad Tammaro and Philip E. Hoffenden, Attorneys at Law, 30 E. Broad St., Columbus, OH 43266, for Plaintiff.*

*Edwin C. Pierce, Attorney at Law, 2717 Manchester Rd., Akron, OH 44319, for Defendant.*

BAIRD, P.J.

This cause comes before the court upon the appeals of defendant-appellants, Chemequip Sales, Inc., dba R & R Engine and Machine Co. (Chemequip), and Leland H. Menke, from their convictions in the Court of Common Pleas of Summit County on charges of falsification pursuant to then-existing R.C. 3734.05(F), R.C. 3734.11, R.C. 3734.99, and Ohio Adm. Code 3745-52-11, and failure to evaluate pursuant to R.C. 3734 11, R.C. 3734.99, and Ohio Adm. Code 3745-52-11.

Following conviction after jury trial, appellant Chemequip was fined $25,000 for the offense of falsification and $25,000 for the offense of failure to evaluate. Appellant Menke, sole owner and president of Chemequip, was fined $10,000 for the offense of falsification and $10,000 for the offense of failure to evaluate. Both appeal.

The charges arose out of an investigation of Chemequip's handling of hazardous waste by the Ohio Environmental Protection Agency (EPA) in 1987.

At all times relevant to this case, Chemequip was engaged in the business of

receiving used gasoline and diesel engines, which were broken down, cleaned, and reconditioned for resale. The engines were cleaned by dipping them into a hot tank containing a caustic solution of sodium hydroxide. The solution stripped the engines of any grease, oil, and dirt. Chemequip maintained two such hot tanks.

Over a period of three to four months, the water in the solution would evaporate and more water would be added to the hot tanks. Eventually, the solution would become too dilute and would be replaced. The spent solution was emptied into floor drains that drained into two underground holding tanks. The underground tanks would discharge the liquid portion of the solution into a leachfield on the premises. Liquid from the leachfield eventually discharged over an embankment behind Chemequip through pipes that protruded from the embankment.

In March of 1987, the EPA took samples of material found in the hot tanks, in the underground tanks, and in some oily sludge found on the embankment. The samples were analyzed, and it was determined that the contents of one underground tank were hazardous wastes due to their ignitability. In July of 1987, the EPA told appellant Menke of the test results. Menke informed the EPA that he also had the underground tanks tested, by a company known as Lion Marketing, but had not yet received the results. Menke then received a letter from Deborah Berg, hazardous waste group supervisor for the Northeastern District Office of the Ohio EPA. Berg ordered Menke to obtain the results of the Lion Marketing analysis and to provide them to her. Menke then sent Berg a letter informing her that he was told by a Lion Marketing representative that the material in the underground tanks was not hazardous. The Lion Marketing representative later denied making any such assertions.

Attached to Menke's letter were two pages of a four-page laboratory analysis done by another analysis company. The missing two pages, later recovered by the EPA from Chemequip's premises, indicated that the samples tested were hazardous due to their ignitability.

Appellants raise four assignments of error.

"I. The Trial Court erred in not granting the Appellant's motion to dismiss as there is no penalty provided by Section 3734.99 of the Ohio Revised Code for a violation of the Administrative Rule 3645-52-11 [sic], Evaluation of Wastes, and therefore, counts two and four of the indict-ment failed to state a crime and the Trial Court lacked jurisdiction of the subject matter."

"II. The Trial Court erred in not granting the Appellant's motion to dismiss as there is no penalty provided by Section 3734.99 of the Ohio Revised Code for a violation of Ohio Revised Code 3734.05(F), with respect to a report required under the Ohio Administrative Rule 3645-52-11(P) [sic], and therefore counts one and three of the indictment failed to state a crime and the Trial Court lacked jurisdiction of the subject matter.

R.C. 3734.11 prohibits any violation of that chapter or any rules promulgated under it. Ohio Adm. Code 3745-52-11(A) requires any person producing waste in Ohio to evaluate that waste to determine if it is hazardous. In addition, Ohio Adm. Code 3745-52-11(F) requires persons producing waste, upon request of the EPA director, to evaluate the waste and submit the results to the EPA. Finally, then-existing R.C. 3734.05(F) prohibited the falsification of any reports required to be submitted to director.

Appellants were convicted of, and sentenced for, the unclassified felonies of failure to evaluate and falsification under R.C. 3734.99. At the time these offenses occurred, that statute read, in part:

"(A) Except as otherwise provided in division (B) of this section, whoever recklessly violates any section of this chapter, except section 3734.18 of the Revised Code, governing the storage, treatment, transportation, or disposal of hazardous waste is guilty of a felony and shall be fined at least ten thousand dollars but not more than twenty-five thousand dollars or imprisoned for at least two years but not more than four years, or both. Whoever violates any section of this chapter governing the disposal of solid wastes, or violates section 3734.18 of the Revised Code, shall be fined not more than two hundred fifty dollars. Each day of violation constitutes a separate offense.

"*** ."

The appellants argue that evaluation and falsification are not related to the storage, treatment, transportation, or disposal of hazardous waste. Therefore, they may not be penalized for these offenses under R.C. 3734.99. Because no other provision of Chapter 3734. provides for criminal penalties, appellants contend that the indictments failed to state a crime, thus depriving the trial court of jurisdiction.

The appellants' argument is not well taken. The enumeration of storage, treatment, transportation, and disposal of hazardous waste is clearly

meant to set hazardous waste apart from solid waste in the statute. As the statute then read, felony criminal liability for the mismanagement of solid waste attached only for violations of provisions of Chapter 3734 relating to the disposal of that waste.

Furthermore, it defies common sense to assume that evaluation or the filing of truthful evaluation reports are not part of the storage, treatment, transportation, or disposal of hazardous waste. Without testing, one cannot know that the waste he generates is hazardous and subject to Chapter 3734 and the rules promulgated thereunder. Without truthful reporting, the EPA cannot identify those persons required to comply with the statutory and regulatory schemes.

We hold that evaluation of waste and truthful reporting of evaluation results are necessary components of the storage, transportation, treatment, and disposal of hazardous waste. This finding, we believe, is consistent with the underlying policies of the statutory and regulatory schemes to protect public health and safety. See *State v. Tipka* (1984), 12 Ohio St. 3d 258, 260. Appellants' first and second assignments of error are overruled.

### Assignment of Error

"III. The Trial Court erred in not granting the Appellant's motion for a judgment of acquittal as to the [sic] counts one and three of the indictment as there was no evidence adduced that the Director of the Ohio EPA requested the submission of the test results in this case which were the basis for the claimed falsification."

For their third assignment of error, appellants rely on that portion of R.C. 3734.05(F) that prohibited falsification of reports "required to be kept or submitted to the director." (Emphasis added). Appellants argue that Deborah Berg, who requested the evaluation results and to whom Menke submitted the falsified report, is not the EPA director.

Both the Ohio Supreme Court and the United States Supreme Court have recognized the now commonplace rule that "when faced with a problem of statutory construction, (the court] shows great deference to the interpretation given the statute by the officers or agency charged with its administration." State, ex rel. *Leis v. Outcalt* (1982), 1 Ohio St. 3d 147, 155, citing *EPA v. National Crushed Stone Assn.* (1980), 449 U.S. 64, 83. The Ohio EPA has defined the director as the "director of the Ohio EPA, or his designee." Ohio Adm. Code 3745-50-10(A)(18). Berg, as the

Supervisor of the Northeastern District Office of the Ohio EPA, is a designee of the director. Appellants' submission of falsified reports to the director's designee constituted submission of the same to the director. Appellants' third assignment of error is overruled.

### Assignment of Error

"IV. The Trial Court erred when it failed to include within its general instructions a special instruction requested by the Appellant defining criminal negligence."

Appellants requested that the following instruction be given to the jurors:

"*** Merely determining that because of a substantial lapse from due care, the defendant fails to perceive or avoid a risk that his conduct may cause a certain result or be of a certain nature is not sufficient to find that he was reckless. *** ."

The rule in Ohio regarding special instructions in a criminal case is that "if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." *Cincinnati v. Epperson* (1969), 20 Ohio St. 2d 59, paragraph one of the syllabus. Appellants' requested instruction was correct. See R.C. 2901.22(D). Furthermore, the instruction was pertinent to the evidence presented by appellants. Appellants' defense at trial was that any acts or omissions on their part rose only to the level of criminal negligence, and not the criminal recklessness required by the statute.

However, we find that the definition of criminal negligence was included, in substance, in the trial court's instructions on criminal recklessness. The trial court instructed the jurors as follows:

"***

"A person acts recklessly when with heedless indifference to the consequences he perversely disregards a known risk that his conduct is likely to create a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when with heedless indifference to the consequences he perversely disregards a known risk that such circumstances are likely to exist.

"Perversely means to deviate from what is considered right or good. It is not necessary for the State to show that a Defendant knew he was breaking the law. You may consider any statements made and all acts done or omitted by a Defendant. You may also consider all acts, all other facts and circumstances in evidence which

indicate a Defendants' state of mind. The criminal state of mind that the State must prove is recklessness.

"The State may satisfy burden of proof on the elements of recklessness either by one, proving recklessness as I just defined it to you or two, by proving knowledge, which is a higher standard.

"*** "

We find that this instruction included the requested See special instruction, "at least in substance." See *Cincinnati v. Epperson*, supra at 61. Instructing a jury on the standard the state must meet necessarily includes the instruction that proof of a lower standard is insufficient. Accordingly, the trial court did not err in refusing to give the requested special instruction, and the appellants' fourth assignment of error is overruled.

For the reasons stated above, the judgment of the trial court is affirmed.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

*Judgment affirmed.*

CACIOPPO, J., and CIRIGLIANO, J., concur.